# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BROOKS, an individual,<br><br>                          Plaintiff,<br><br>v.<br><br>SUN CASH OF SD, LLC; CHECK CASHIERS OF SOUTHERN CALIFORNIA, INC., d/b/a USA CHECKS CASHED,<br><br>                          Defendants. | Case No.: 3:17-cv-01934-H-AGS<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT AND ATTORNEY'S FEES AND COSTS**<br><br>[Doc. Nos. 9, 10] |

On November 11, 2017, Plaintiff Patrick Brooks ("Plaintiff") filed a motion for default judgment against Defendant Sun Cash of SD, LLC ("Sun Cash"). (Doc. No. 9.) Also on November 11, 2017, Plaintiff filed a motion for attorney's fees and costs. (Doc. No. 10.) To date, Sun Cash has not filed any opposition to Plaintiff's motions or otherwise appeared in this case. The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determines that the motions are fit for resolution without oral argument, submits the motions on the papers, and vacates the hearings set for February 20, 2018. For the reasons discussed below, the Court grants Plaintiff's motions for default judgment and attorney's fees and costs.

## BACKGROUND

Sometime before July 2017, Plaintiff and Sun Cash entered into a short-term payday loan transaction in which Plaintiff provided Sun Cash with a personal check, post-dated by approximately two weeks, in the amount of $300, and Plaintiff immediately received $255 in cash. (Doc. No. 1 ¶ 33.) The $45 difference represented fees and interest charged by Sun Cash. (Id.) Plaintiff incurred this debt primarily for personal, family, or household purposes. (Id. ¶ 35.) Plaintiff did not have sufficient funds to cover the post-dated check, and his bank returned the check to Sun Cash as unpaid. (Id. ¶ 34.)

In or around July 2017, Plaintiff retained an attorney to assist him with his indebtedness. (Id. ¶ 27.) On July 26, 2017, Plaintiff filed a Chapter 7 Bankruptcy, and on July 28, 2017, the Bankruptcy Court served a "Notice of Chapter 7 Bankruptcy" ("BNC Notice") on all of Plaintiff's creditors, including Sun Cash. (Id. ¶¶ 28, 29.) The BNC Notice stated that Plaintiff was represented by counsel and identified Plaintiff's bankruptcy counsel by name and address. (Id. ¶ 37.) In addition, the BNC Notice advised Sun Cash to cease and desist all collection attempts against Plaintiff by mail, phone, or otherwise. (Id. ¶ 38.)

Sun Cash, however, continued to contact Plaintiff directly by mail and by phone. (Id. ¶ 40.) On August 4, 2017, Sun Cash sent a letter to Plaintiff's home address demanding payment on the debt in the amount of $300.00. (Id. ¶ 55.) On September 6, 2017, Sun Cash sent another letter to Plaintiff's home address demanding payment on the debt in the amount of $300.00. (Id. ¶ 56.) Moreover, on September 6, 2017, Sun Cash contacted Plaintiff directly on his cellular phone via text message. (Id. ¶ 41.) Sent using the telephone number 77513, that text message stated:

> Sun Cash of SD, LLC: Your last pmt was returned by your bank. Pls call (619) 583-2100 to discuss your options before add'l fees apply. For help reply HELP

(Id. ¶ 42; see Doc. No. 9 Ex. 2.)

Similarly, on September 21, 2017, Sun Cash contacted Plaintiff directly on his

cellular phone via text message. (Doc. No. 1 ¶ 45.) The text message was sent using telephone number 77513 and stated:

> Sun Cash of SD, LLC: Your last pmt was returned by your bank. Pls call (619) 583-2100 to discuss your options before add'l fees apply. For help reply HELP

(Id. ¶ 46; see Doc. No. 9 Ex. 2.)

On September 22, 2017, Plaintiff initiated the present action against Sun Cash and Defendant Check Cashiers of Southern California, Inc. ("Check Cashiers"), claiming violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq., and the Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act"), California Civil Code §§ 1788 et seq. (Doc. No. 1.) On October 25, 2017, the Clerk of Court made an entry of default for Sun Cash. (Doc. No. 5.) On October 29, 2017, Plaintiff filed a notice of settlement and notice of voluntary dismissal as to Check Cashiers only. (Doc. No. 6.)

On January 11, 2018, Plaintiff filed a motion for default judgment against Sun Cash and a motion for attorney's fees and costs. (Doc. Nos. 9, 10.) For the following reasons, the Court grants Plaintiff's motions.

## DISCUSSION

### I. Legal Standards for Default Judgment

Plaintiff moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. No. 9-1 at 3.) In determining whether to exercise its discretion to grant default judgment, the Court may consider the so-called Eitel factors, namely "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"A default judgment must not differ in kind from, or exceed in amount, what is

demanded in the pleadings." Fed. R. Civ. P. 54(c). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).

## II. Review of Requested Default Judgment

### A. Appropriateness of Default Judgment

Based on careful consideration of the Eitel factors, the Court concludes that default judgment is appropriate on Plaintiff's claims under the TCPA and the Rosenthal Act. See Eitel, 782 F.2d at 1471-72. As explained in more detail below, Plaintiff's factual allegations are sufficient and his substantive claims meritorious. In addition, the prejudice to Plaintiff in the absence of entry of default is considerable. Sun Cash has been served with the complaint and Plaintiff's motion for default judgment, but has failed to appear. (See Doc. Nos. 3, 9-6.) The record contains no indication that Sun Cash's default was due to excusable neglect. (See Doc. No. 9-2, Sinnett Decl. ¶¶ 2-3.) Absent entry of default judgment, Plaintiff would have no remedy against Sun Cash, a party that has refused to litigate. Moreover, there is no dispute as to material facts because Sun Cash has not appeared to contest Plaintiff's allegations. And although the Court recognizes the strong policy favoring decisions on the merits, proceeding with the instant litigation would be futile given Sun Cash's failure to appear.

Plaintiff's factual allegations, accepted as true as a result of Sun Cash's default, establish Sun Cash's violations of the TCPA and the Rosenthal Act.

#### 1. TCPA Claims

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)(B)). "Automatic telephone dialing system" ("ATDS") means "equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B)

to dial such numbers." Id. (quoting 47 U.S.C. § 227(a)(1)). The TCPA applies to autodialed debt collection calls made to a wireless number. Blair v. CBE Grp. Inc., No. 13-CV-134, 2013 WL 5677026, at *3-5 (S.D. Cal. Oct. 17, 2013). Text messages are "calls" under the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009).

"Express consent" is "[c]onsent that is clearly and unmistakably stated." Id. at 955 (alteration in original) (citation omitted). When a consumer gives his phone number to a company, "the transactional context matters in determining the scope of [that] consumer's consent to contact." Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1046 (9th Cir. 2017). "[T]he TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems." Id. at 1048. To be effective revocation for TCPA purposes, "[r]evocation of consent must be clearly made and express a desire not to be called or texted." Id.

Here, Plaintiff alleges that Sun Cash used an ATDS to send two text messages from the number "77513" directly to Plaintiff's cellular phone for the purpose of collecting Plaintiff's debt. (Doc. No. 1 ¶ 49.) Plaintiff claims that the text messages were sent using an ATDS because the texts were "impersonal" and were sent from "SMS short code, '77513.'" (Doc. No. 9-1 at 5.) Plaintiff also alleges that Sun Cash did not have Plaintiff's prior consent to send the two text messages in September 2017, because the BNC Notice, served on Sun Cash on July 28, 2017, revoked any consent Plaintiff may have given to be contacted regarding the debt, (Doc. No. 1 ¶ 53); the BNC Notice stated, "Creditors cannot demand repayment from debtors by mail, phone, or otherwise," (Doc. No. 9 Ex. 3).

Thus, accepted as true, the allegations in Plaintiff's complaint establish that Sun Cash violated the TCPA by sending two text messages to Plaintiff's cellular phone using an ATDS without his prior express consent.

### 2. Rosenthal Act Claim

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et seq., "comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." Gonzales v. Arrow Fin. Servs.,

LLC, 660 F.3d 1055, 1060-61 (9th Cir. 2011). The FDCPA prohibits debt collectors from, for example, communicating with a consumer known to be represented by an attorney, 15 U.S.C. § 1692c(a)(2); communicating with a consumer after the consumer notifies the debt collector in writing that he wishes the debt collector to cease further communication regarding the debt, id. § 1692c(c); and engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, id. § 1692d. The FDCPA is a strict liability statute. Gonzales, 660 F.3d at 1061. Violations of Sections 1692b-j of the FDCPA are independent violations of the Rosenthal Act, which is, similarly, a strict liability statute. Cal. Civil Code §§ 1788.17, 1788.30(a).

Here, Plaintiff alleges that Sun Cash regularly engages in "debt collection" and is a "debt collector" for purposes of the Rosenthal Act. (Doc. No. 1 ¶ 21.) Plaintiff alleges that Sun Cash communicated with Plaintiff via text messages and mail after Plaintiff had served Sun Cash with the BNC Notice, which stated that Plaintiff was represented by counsel and identified Plaintiff's bankruptcy counsel by name and address. (Id. ¶¶ 36-37, 40.) In addition, the BNC Notice advised Sun Cash to cease all collection attempts against Plaintiff by mail, phone, or otherwise. (Id. ¶ 38.) Thus, Plaintiff has sufficiently alleged meritorious claims under the FDCPA and, therefore, under the Rosenthal Act.

In sum, based on careful consideration of all of the Eitel factors, the Court concludes that default judgment is appropriate on Plaintiff's TCPA and Rosenthal Act claims.

**B. Relief Sought**

A plaintiff who establishes that the defendant has violated the TCPA may obtain $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3)(B). A court may, in its discretion, increase the damages award to up to three times the amount otherwise recoverable if the court finds that the defendant "willfully or knowingly" violated the TCPA. Id. § 227(b).

Moreover, a debt collector who "knowingly and willfully" violates the Rosenthal Act is liable for statutory damages not less than $100 nor greater than $1,000. Cal. Civil Code § 1788.30(b). Statutory damages under the Rosenthal Act are limited to $1,000 per

lawsuit, not $1,000 per violation. Marseglia v. JP Morgan Chase Bank, 750 F. Supp. 2d 1171, 1180 (S.D. Cal. 2010). Furthermore, remedies under the Rosenthal Act are "cumulative and are in addition to any other . . . remedies under any other provision of law." Cal. Civil Code § 1788.32; accord Gonzales, 660 F.3d at 1067 ("[T]he Rosenthal Act does not limit recovery simply because it is also available under federal law."). When determining the amount of liability for violation of the Rosenthal Act, courts consider the frequency and persistence of the debt collector's noncompliance, the nature of such noncompliance, and the extent to which such noncompliance was intentional. See, e.g., Lyon v. Bergstrom Law, Ltd., No. 16-CV-401, 2017 WL 2350447, at *10-11 (E.D. Cal. May 31, 2017); Patton v. Prober & Raphael, a Law Corp., No. 11-CV-1458, 2012 WL 294537, at *6-7 (N.D. Cal. Jan. 13, 2012); McKibben v. Collection Prof'l Servs., No. 9-CV-2949, 2010 WL 2025319, at *8 (E.D. Cal. May 18, 2010).

Plaintiff seeks statutory damages for two violations of the TCPA and one violation of the Rosenthal Act. (Doc. No. 9-1 at 7-9.) Exercising its sound direction, and having carefully considered all of Plaintiff's factual allegations and arguments, the Court awards Plaintiff $1,000 in statutory damages under the TCPA and $100 in statutory damages under the Rosenthal Act.

**C. Attorney's Fees and Costs**

Plaintiff also requests attorney's fees and costs pursuant to the Rosenthal Act, California Civil Code § 1788.30(c). (Doc. No. 10.) The Rosenthal Act provides that "the prevailing party shall be entitled to costs of the action" as well as reasonable attorney's fees "based on time necessarily expended to enforce the liability." Cal. Civil Code § 1788.30(c).

District courts use the "lodestar" method to calculate reasonable attorney's fees, multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted). The prevailing market rates in the forum in which the district court sits set the reasonable hourly rate. Gonzalez v. City of Maywood, 729 F.3d 1196,

1205 (9th Cir. 2013). Within this geographic community, the district court should consider the requesting attorney's "experience, skill, and reputation." Id. at 1205-06 (citation omitted). The fee applicant must produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). As evidence of prevailing market rates, the Court considers all of the information in the record, including affidavits by the fee applicant's attorneys and other attorneys regarding prevailing market rates, as well as rate determinations in other cases, "particularly those setting a rate for the [fee applicant's] attorney." See United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff is entitled to an award of reasonable attorney's fees and costs because he prevailed in this Rosenthal Act action through default judgment. In support of his motion, Plaintiff has submitted a detailed summary of legal services provided, (Doc. No. 10 Ex. 1); a sworn declaration by Plaintiff's counsel regarding his experience, billing rate, and incurred costs, (Doc. No. 10-2, Sinnett Decl.); and a sworn declaration by a consumer law attorney who practices in the Central District of California, (Doc. No. 10-3, Lloyd Decl.). Plaintiff's counsel seeks payment for 17.7 hours of work at a rate of $375 per hour, totaling $6,637.50, as well as $400 in costs. (Doc. No. 10 Ex. 1.)

Looking to Plaintiff's counsel's declaration, the Court notes that Plaintiff's counsel has litigated numerous actions under the Rosenthal Act and similar consumer protection statutes. (Doc. No. 10-2, Sinnett Decl. ¶ 4.) Plaintiff's counsel was admitted to the State Bar of California in May 2015. He was awarded $400 per hour for 206.20 hours of work pursuant to an FDCPA default judgment in the Central District of California. (Doc. No. 10-1 at 4.) Additionally, Plaintiff submits a declaration by Mr. Aaron Lloyd, who practices consumer law in the Central District of California and opines that $375 is a reasonable hourly rate considering Plaintiff's counsel's experience and expertise. (Doc. No. 10-3, Lloyd Decl. ¶¶ 3-4, 6.) Finally, Plaintiff submits excerpts from the 2013-2014 United States

Consumer Law Attorney Fee Survey, which reports that "85.9% of all California Consumer Law attorneys (regardless of all other factors) have a billable hourly rate above $325 and the average rate was $439." (Doc. No. 10 Ex. 2.) As submitted, this Survey does not report on the average hourly rate for consumer law attorneys in the Southern District with similar degrees of experience as Plaintiff's counsel. (See id.)

The Court is not persuaded that the hourly rate Plaintiff's counsel requests is consistent with the prevailing market rates in San Diego for the type of work involved in this case. The Court finds that a reasonable hourly rate for the work performed in this case is $250. See Arana v. Monterey Fin. Servs. Inc., No. 15-CV-2262, 2016 WL 1324269, at *2 (S.D. Cal. Apr. 4, 2016) (awarding Plaintiff's counsel, Mr. Sinnett, $250 per hour in FDCPA and Rosenthal Act action following Federal Rule of Civil Procedure 68 Offer of Judgment).

The Court also determines that Plaintiff requests reimbursement for unrecoverable clerical work. See Davis v. City & County of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) (citing Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)), vacated on other grounds, 984 F.2d 345 (9th Cir. 1993). Unrecoverable clerical tasks include filing and scheduling, preparing exhibits, and preparing a proof of service. See Arana, 2016 WL 1324269, at *3 (collecting cases). Plaintiff's submitted billing records contain 1.1 hours that Plaintiff's counsel spent on these unrecoverable tasks. (See Doc. No. 10 Ex. 1.) Thus, the Court deducts these 1.1 hours as unreasonable.

Taking this deduction into account, the lodestar calculation is as follows: 16.6 (hours approved) multiplied by $250 (hourly rate), yielding $4,150.

Plaintiff's counsel seeks reimbursement for $400 in costs for filing fees. (Doc. No. 10 Ex. 1.) The Court approves of these costs. Cal. Civil Code § 1788.30(c).

//
//
//
//

## **CONCLUSION**

The Court concludes that Plaintiff is entitled to a default judgment on his TCPA and Rosenthal Act claims against the defaulted Defendant Sun Cash. The Court awards $1,100 in statutory damages and grants $4,550 in attorney's fees and costs.

**IT IS SO ORDERED.**

DATED: February 7, 2018

*[signature]*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

10

3:17-cv-01934-H-AGS